

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-9-2007

# USA v. Hlinak

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1239

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Hlinak" (2007). *2007 Decisions*. Paper 1637.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1637

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-1239
_____

UNITED STATES OF AMERICA

v.

JEFFREY HLINAK,

Appellant.


_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(Criminal No. 04-cr-00091)
District Judge: Hon. William W. Caldwell

Submitted Under Third Circuit LAR 34.1(a)
January 26, 2007

Before:  SCIRICA, <u>Chief Judge</u>, FUENTES and CHAGARES, <u>Circuit Judges</u>.


_____

(Filed February 9, 2007)


OPINION OF THE COURT

CHAGARES, Circuit Judge.

In this appeal, Jeffrey Hlinak argues that the District Court inappropriately applied the sentencing guideline for money laundering and failed to articulate the factors set forth in 18 U.S.C. § 3553 in imposing a sentence. We will reject both arguments and affirm.

I.

Because we write solely for the parties, we present the facts briefly.

In hundreds of fraudulent transactions, Hlinak received refunds from retail stores for returning items actually purchased at other stores. For a given item, he would obtain more in the refund than the amount he paid. His scheme included altering receipts to allow for multiple returns from a single purchase and altering advertisements so as to buy items at lower prices from stores with "price match guarantees." In May of 2001, he caused a wire transfer of proceeds from this scheme from one bank account to another, and then deposited the funds in a brokerage account. For these activities, Hlinak pleaded guilty to an information listing two counts: wire fraud in violation of 18 U.S.C. § 1957 and forfeiture of $801,850.72 in criminally derived proceeds pursuant to 18 U.S.C. § 982. The District Court first sentenced Hlinak in September of 2004. The court applied the sentencing guideline for money laundering, U.S.S.G. § 2S1.2, and calculated the applicable sentencing range as forty-six to fifty-seven months.

The District Court imposed a sentence of fifty and one-half months of imprisonment. We remanded the sentence in light of United States v. Booker, 543 U.S.

220 (2005), and, at re-sentencing, the District Court imposed the same imprisonment term.

## II.

We have jurisdiction to review a sentence for reasonableness pursuant to 18 U.S.C. § 3742(a)(1). See United States v. Cooper, 437 F.3d 324, 327 (3d Cir.2006). The arguments Hlinak raises on appeal were not presented to the District Court, and as such, we review for plain error only. An error is plain only if it is clear or obvious. See, e.g., United States v. Dragon, 471 F.3d 501, 505 (3d Cir. 2006). If we conclude plain error exists we "exercise our discretion to correct the error only if it seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotation marks omitted) (alteration in original).

## A.

The first issue we consider is whether the sentencing court should have applied the fraud guideline instead of the money laundering guideline in calculating Hlinak's sentencing range. Under the fraud guideline, Hlinak's offense level would have been lower, resulting in a less severe guideline sentencing range.

Hlinak relies on United States v. Smith, 186 F.3d 290 (3d Cir. 1999), to argue that the money laundering guideline was inappropriate because the conduct for which he was sentenced was not in the "heartland" of that guideline. In Smith, we held that courts should only apply the money laundering guideline if a defendant's conduct falls within the "heartland" of the guideline, conduct such as "money laundering activity connected

3

with extensive drug trafficking and serious crime." Smith, 186 F.3d at 300. Later cases explained that the money laundering guidelines, U.S.S.G. §§ 2S1.1 and 2S1.2, are appropriate in cases "involving typical money laundering, financial transactions that are separate from the underlying crime and that are designed either to make illegally obtained funds appear legitimate, to conceal the source of some funds, or to promote additional criminal conduct by reinvesting the funds in additional criminal conduct." See United States v. Diaz, 245 F.3d 294, 310 (3d Cir. 2001).

When we developed the "heartland" analysis in Smith, we relied on language in the Statutory Index of the guidelines, Appendix A. Smith, 186 F.3d at 297. That appendix provides a list of criminal statutes and matches them to the corresponding guideline section. At the time of Smith, the introductory commentary to the appendix provided the following instruction: "If, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted." U.S. Sentencing Guidelines Manual app. A at 417, introductory cmt. (1998).

Amendment 591, effective November 1, 2000, eliminated the text we relied on in Smith. Specifically, as amended, the appendix no longer contained the language regarding what to do in an "atypical" case. U.S. Sentencing Guidelines Manual app. C at 29 (Supp. 2000). The Sentencing Commission's commentary explained that Amendment 591 clarified "that the sentencing court must apply the offense guideline referenced in the

4

Statutory Index for the statute of conviction" unless the defendant has stipulated commission of a more serious offence in a plea agreement. Id. at 30 (emphasis added) (indicating the "heartland" analysis in Smith partially motivated the Amendment). As such, our reasoning in Smith stood on shaky ground. See, e.g., United States v. Mustafa, 238 F.3d 485, 496 (3d Cir. 2001) ("Given these amendments, the continued relevance of Smith is open to question.").

It did not take long for us to exclaim that "[t]he only fair reading of the Amendment and of the amended guidelines is that Smith, and its approach to applying the guidelines, is no longer good law." Diaz, 245 F.3d at 303 (deciding that the Amendment cannot apply retroactively to a sentence imposed before November 1, 2000 because the Amendment represented a substantive change in the law).

The conduct giving rise to Hlinak's wire fraud offense occurred after November of 2000, and Hlinak does not argue that the 2000 sentencing guidelines were inappropriately applied. Cf. United States v. Omoruyi, 260 F.3d 291, 298 (3d Cir. 2001) (applying Smith's "heartland" analysis because conduct forming the basis of conviction occurred prior to the effective date of the amended guidelines). It is clear that "[u]nder the guidelines as amended," which are applicable here, "courts have no discretion to decide that the money laundering guideline is inappropriate or not the most applicable guideline on the facts of a given case." Diaz, 245 F.3d at 303. Hlinak's argument that his conduct fell outside the "heartland" of the money laundering guideline is irrelevant. The District Court could not have considered that argument in calculating the appropriate guideline

5

range.  Accordingly, we conclude the District Court properly calculated Hlinak's offense level.

**B.**

Hlinak also argues that, if the District Court properly calculated the guideline sentencing range, the record fails to indicate that the District Court gave "meaningful consideration" to the sentencing factors set forth in 18 U.S.C. § 3553(a).[1]  See Cooper, 437 F.3d at 329.  Specifically, he argues that the court should have "explain[ed] how and

---

[1]18 U.S.C. § 3553(a) sets forth factors to be considered in imposing a sentence. That provision provides:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for –
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines. . .;
>> (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission. . .;
> (5) any pertinent policy statement. . .;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

why a 51-month sentence reflect[ed] the seriousness of the offense, promoted respect for law, and provided just punishment and deterrence, while a lesser sentence would not." Def. Br. at 17.

A sentencing court need not "discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account." Cooper, 437 F.3d at 329. Nor must a court "routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2)." Dragon, 471 F.3d at 506. Here, Hlinak argues that the sentence should be vacated because the court never referenced the § 3553(a) factors and it never explicitly announced why anything less than fifty and one-half months would be too light. Dragon and Cooper instruct that this does not amount to error.[2]

In sentencing Hlinak, the District Court explained its sentencing rationale. After reviewing the record, we conclude that the District Court satisfied its § 3553 obligations.

## III.

For the foregoing reasons, we will affirm the judgment of sentence imposed by the District Court.

---

[2] Hlinak also argues that the District Court imposed a sentence as if the guidelines were mandatory, but does not provide support for this claim or persuade us that this is so. True, the District Court did not explicitly announce that the guidelines were advisory, but that does not indicate that the court failed to recognize their advisory nature. See Cooper, 437 F.3d at 329. The re-sentencing was required because the initial sentence was set under a mandatory-guideline regime. The record indicates participants in the hearing knew that. App. at 91, 95.